UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| SHELDON F. GOLDBERG, et al., | Case No. 2:17-CV-2106 JCM (VCF) |
| Plaintiff(s), | ORDER |
| v. | |
| JACK BARRECA, et al., | |
| Defendant(s). | |

Presently before the court is an "emergency" motion for reconsideration of this court's orders denying plaintiffs' motions for a temporary restraining order (TRO) and preliminary injunction. (ECF No. 10). The motion is denied.

I. **Facts**

The present emergency motion is the most recent installment in a series of purported emergencies in a case about margaritas. (ECF Nos. 10). On August 4, 2017, plaintiffs filed a complaint against defendants in this court alleging nineteen causes of action. (ECF No. 1). On August 7, 2017, plaintiffs filed an emergency motion for a TRO and for the appointment of a receiver or trustee. (ECF No. 4). On the same day—in an identical document—plaintiffs moved for a preliminary injunction. (ECF No. 5).

On August 8, 2017, this court received defendants' *pro se* response to plaintiffs' motion for a TRO. (ECF No. 6).[1]

---

[1] Within the pages of Sheldon Goldberg's declaration in support of the instant motion, he now provides this court with an argument in reply to defendants' *pro se* response. (ECF No. 10-2 at 7–31). This is the improper location for a memorandum of points and authorities. *See* LCR 47-1. In any event, although this court's August 9 and 10 orders acknowledged the filing of this response, it did not rely on its contents in ruling against plaintiffs' motions, which were defective on their faces and did not present prima facie cases for injunctive relief. (ECF Nos. 7, 8).

In their motions, plaintiffs recited a detailed history of a business relationship between plaintiffs and defendants. In a nutshell, plaintiffs alleged that they invested over $220,000 in a joint business venture with defendants for the purpose of manufacturing and selling a margarita product with plans of creating a company for this purpose going forward. (ECF Nos. 4, 5).

Plaintiffs allege that the defendants encouraged the plaintiffs to continue investing in the venture with assurances that the plaintiffs were considered partners and would reap a share in the profits from the sale of the product. However, plaintiffs claim that when the time to bottle the product drew near, defendants changed their position and indicated an intent to treat plaintiffs' investments as a simple loan and not share the profits. A distillery in Florida was ready to bottle the margarita product as early as August 7, 2017, and plaintiffs claimed that if this court allowed the Florida distillery to release the bottled product to the defendants thereafter, the defendants would then sell the product and "take the money and run—perhaps even skip town ([defendant] Jack has no family in Las Vegas)." (ECF No. 4 at 2, 15–16). Plaintiffs alleged that their investment is "tied up" in the margarita product and if this court "does not intervene, all will be lost," and ". . . the only major asset of the Partnership (the margarita product) would be gone." *Id.* at 15. Plaintiffs further asserted that the defendants intend to "traffic liquor" in violation of Nevada liquor law. (ECF No. 4 at 16). Finally, plaintiffs argue that allowing the defendants to receive the margarita product after bottling would mean that third parties "would likely get access to the margarita product and related intellectual property and trade secrets rightfully owned by the Partnership" of which the plaintiffs purport to be a part. *Id.* at 15.

Accordingly, in the motions for a TRO and preliminary injunction, the plaintiffs requested that this court enter a twelve-paragraph order detailing the required and proscribed conduct of the defendants going forward in relation to this margarita product venture, including among other things, that the defendants "shall not in any manner sell, grant, transfer . . . or otherwise encumber . . . any product or other property attributable with any interest to . . . any or all of the Defendants, any or all of the Plaintiffs, the Partnership Agreement, and/or a partnership between [the parties] currently located at Florida Distillers' facilities"; that "Defendants shall allow product to be bottled by Caribbean Distillers . . . ('Florida Distillers') . . . but any and all [of this product] . . . must

James C. Mahan
U.S. District Judge

- 2 -

remain and be stored at the Florida Distillers' facilities pending further order of the Court"; that defendants deposit into a trust account or with the court any proceeds from the sale of the margarita product; and that defendants shall somehow "allow" plaintiffs to enter the premises and facilities of the Florida Distillers—a non-party to this action. (ECF No. 4 at 13–14). Further, plaintiffs requested that this court appoint one of the plaintiffs, Sheldon Goldberg himself, as either a receiver or trustee of the business venture. *Id.* at 24–26.

On August 9, 2017, this court entered an order denying plaintiffs' motion for a TRO. (ECF No. 7). On August 10, 2017, this court entered a nearly identical order denying plaintiffs' motion for a preliminary injunction. (ECF No. 8). In each order, this court explained that "*whatever* merit plaintiffs may have in their ability to demonstrate a likelihood of success on the merits" of their claims, this "does not, without more, warrant this court's intervention" because the other three elements required for this court's extraordinary injunctive relief in the form of a TRO or preliminary injunction were not satisfied. (ECF Nos. 7 at 6; 8 at 6) (emphasis added). Of particular note, this court explained that the harm plaintiffs alleged is not "irreparable" because, if plaintiffs' claims are truly merited, this court may enter a money judgment in their favor at the conclusion of this case designed to make the plaintiffs whole. (ECF Nos. 7 at 4–5; 8 at 4–5). The court also explained that the balance of hardships and public interest weighed heavily in favor of the defense. (ECF Nos. 7 at 5–6; 8 at 5–6). Finally, the court noted that several of plaintiffs' allegations—for example, the allegation that Jack Barreca might "skip town"—were speculative and hypothetical and therefore inadequate for injunctive relief. (*See, e.g.*, ECF Nos. 7 at 4–5; 8 at 4); *see also Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1171 (9th Cir. 2011).

On August 14, 2017 (four days after the court's last order and one week after the plaintiffs filed the original motions for injunctive relief), plaintiffs returned to this court with an "emergency" motion for reconsideration of both the order denying the requested TRO and the order denying the preliminary injunction. (ECF No. 10). To this new motion, plaintiffs now attach about 230 pages of exhibits, and in roughly 140 pages of which plaintiffs claim to set forth "new facts, evidence, and issues" they did not present to the court when they filed their original motions

**James C. Mahan**
**U.S. District Judge**

- 3 -

only a week prior. (*See* ECF No. 10-2). In a 32-page, single-spaced declaration,[2] plaintiff Sheldon Goldberg walks through plaintiffs' newly-attached evidence. *Id.* at 2–33. In summary, he explains:

> The newly acquired documents explain why [defendant Giacomo "Jack" Barreca] breached his agreement with Plaintiffs and had no intention of ever[] honoring it from the beginning. The following previously unavailable evidence is proof that Defendant Jack Barreca is a fraud and had fraudulent intentions from the beginning. Plaintiffs entered into their agreement with Jack on good faith but the evidence will now document that Jack entered it to defraud Plaintiffs.

(*Id.* at 2). Accordingly, in the instant motion, plaintiffs argue that "there are new facts, evidence, and issues" that warrant reconsideration. (ECF No. 10 at 2). In summary, plaintiffs argue that the "new" evidence shows as follows:

a) A "recently discovered" letter shows that defendant Barreca fraudulently promised the same margarita product to two different investors (including plaintiffs and another individual) who did not know of each other's involvement, to be delivered at the same time and place at the same event, and fulfilling both promises would have been impossible; therefore, Barreca "cut out" plaintiffs of the deal;

b) A "recently discovered" contract shows that Barreca does not have his own special liquor license, and the margarita product "may and likely will" be shipped under the "bottler's" license;

---

[2] Local Rule 7-3 strictly sets the page limit for motions other than motions for summary judgment to no more than 24 pages, excluding exhibits. Motions must be supported by a memorandum of points and authorities, which "must be combined into a single document that complies with the page limits in LR 7-3." LR 7-2. Plaintiffs' instant motion appears, on its face, to comply with this rule because it is 24 pages long. However, Sheldon's 32-page, single-spaced declaration appears to contain nearly all legal and factual arguments, opinions, and plaintiffs' characterizations of the evidence in this case, which all belongs in the motion's memorandum of points and authorities, not in an affidavit or declaration. *See* LCR 7-2; *see, e.g.*, ECF No. 10-2 at 5 (discussing Nevada law and how it applies to these facts); ECF No. 10-2 at 7–31 (Sheldon Goldberg's argument in reply to defendants' response to the original motions). By approaching motion-practice this way, plaintiffs have circumvented the page-limit requirement for motions under LR 7-3. This is improper. An affidavit or declaration is not a place for legal and factual argument on the merits of a case, *see* Affidavit, Black's Law Dictionary (10th ed. 2014); Declaration, Black's Law Dictionary (10th Ed. 2014) ("8. A formal, written statement . . . that attests, under penalty of perjury, to *facts known by the declaration*." (emphasis added)), which instead must be included within the 24 pages of the motion itself, *see* LR 7-3. Accordingly, plaintiffs are admonished not to include argument in the declarations attached to future motions, responses, or replies, or this court will strike the noncompliant documents.

**James C. Mahan**
**U.S. District Judge**

- 4 -

c) In a "recent" conversation with the bottler, plaintiffs learned that Barreca "did not have a facility or license to produce the margarita product and that the bottler could be used to that end";

d) "In an email recently receive[d] from the bottler, Plaintiffs learned of a new type of irreparable harm and injury being caused by Defendants—the loss of Plaintiffs' rights, as partners, to equal access, control, and rights to the margarita product and the margarita venture. They also learned that as a licensed Nevada supplier who sent an invoice for the margarita product to Nevada, which invoice Plaintiffs paid in full, the bottler was ready, willing, and able to abide by any TRO the court may issue.";

e) "A recently received declaration of [a] third-party witness shows how Jack defrauded Plaintiffs in that he held out Sheldon as a partner, but refused to take action he promised Sheldon would take";

f) Plaintiffs make a new argument regarding why an arbitration clause is not enforceable; and

g) In light of all the recently obtained information and evidence, "[p]laintiffs have substantially narrowed their request for a TRO." (ECF No. 10 at 2–3).

h) Additionally, Sheldon Goldberg shares "new" evidence that defendants lost a buyer.

On August 14, defendants filed a *pro se* response to the instant motion. (ECF No. 13).

On August 14, plaintiffs replied. (ECF No. 14).

On August 18, defendants filed a notice of appearance of their attorney, who has yet to make any filings in this case. (ECF No. 15).

## II. Legal Standard

This court possesses the inherent power to reconsider an interlocutory order for cause so long as the court retains jurisdiction. LR 59-1(a). A party seeking reconsideration under this rule must state with particularity the points of law or fact that the court has overlooked or misunderstood, or state with particularity how changes in legal or factual circumstances entitle the movant to relief. *Id.* "Reconsideration may also be appropriate if (1) there is newly discovered evidence *that was not available when the original motion or response was filed*, (2) the court

committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Id.* (emphasis added).

"Motions for reconsideration are disfavored. A movant must not repeat arguments already presented unless (and only to the extent) necessary to explain controlling, intervening law or to argue new facts. *A movant who repeats arguments will be subject to appropriate sanctions.*" LR 59-1(b) (emphasis added).

Federal Rule of Civil Procedure 65 allows a court to enter a temporary restraining order and preliminary injunction. However, "[i]njunctive relief is an extraordinary remedy and it will not be granted absent a showing of probable success on the merits and the possibility of irreparable injury should it not be granted." *Shelton v. Nat'l Collegiate Athletic Assoc.*, 539 F.2d 1197, 1199 (9th Cir. 1976). The purpose of a preliminary injunction is to preserve a party's rights pending resolution of the merits of the case by the trial. *Big Country Foods, Inc. v. Board of Educ. of Anchorage School Dist., Anchorage, Alaska*, 868 F.2d 1085, 1087 (9th Cir. 1989). The grant or denial of a motion for a preliminary injunction is a matter of the district court's discretion. *United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 174 (9th Cir. 1987).

"The purpose of a temporary restraining order is to preserve the status quo before a preliminary injunction hearing may be held; its provisional remedial nature is designed merely to prevent irreparable loss of rights prior to judgment." *Estes v. Gaston*, No. 2:12-cv-1853-JCM-VCF, 2012 WL 5839490, at *2 (D. Nev. Nov. 16, 2012) (quoting *Miller v. Rufion*, No. 08–1233, 2009 WL 348176, at *1 (E.D. Cal. Feb. 11, 2009); *see also Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).

This court must consider the following elements in determining whether to issue a temporary restraining order and preliminary injunction: (1) a likelihood of success on the merits; (2) likelihood of irreparable injury if preliminary relief is not granted; (3) balance of hardships; and (4) advancement of the public interest. *Winter v. N.R.D.C.*, 555 U.S. 7, 20 (2008); *Stanley v. Univ. of S. California*, 13 F.3d 1313, 1319 (9th Cir. 1994); Fed. R. Civ. P. 65. The party seeking the injunction must satisfy each element.

Finally, to obtain injunctive relief, plaintiffs must show themselves to be "under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1171 (9th Cir. 2011) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488 (2009)).

"Emergency motions should be rare." LR 7-4(b). The court may determine whether any matter submitted as an "emergency" is, in fact, an emergency. LR 7-4(c).

### III. Discussion

As a preliminary matter, this situation does not constitute an "emergency." LR 7-4(c). For a motion to be an "emergency" to a federal court, the situation typically must involve some significant degree of urgency, severity, and irreparability, and it must be a situation a court is well suited to remedy. A business relationship gone sour—even where plaintiffs risk losing money or risk loss of partnership rights in the short term—without more, does not constitute such an "emergency" that it justifies this court setting aside the court's hundreds of other important, earlier-filed matters to immediately address this matter. The court has promptly entertained the plaintiffs' "emergencies" twice now, but plaintiffs are admonished against further "emergency" filings without sufficient justification.

Next, little of plaintiffs' motion for reconsideration—if any—meets the criteria that would allow for reconsideration of an interlocutory order. Plaintiffs do not argue that this court has overlooked or misunderstood any points of law or fact. LR 59-1(a). Nor do plaintiffs argue that the court committed clear error, that its decision was manifestly unjust, or that there was an intervening change in controlling law. *Id.* Rather, plaintiffs argue only that there are changed factual circumstances or that they have newly discovered evidence entitling them to relief. *Id.* But to present new evidence in a motion for reconsideration, the evidence must have been *unavailable* to the movant when he filed his original motion, not simply evidence he had failed to discovered or had overlooked. *Id.*

James C. Mahan
U.S. District Judge

- 7 -

For the vast majority of the "newly discovered" evidence plaintiffs present for the first time in their motion for reconsideration, there is no indication that it was unavailable to them at the time they filed their original, August 7, 2017 motions. To the contrary, many of the newly-attached items clearly were "available" to plaintiffs on or before August 7 because they constitute emails, to which one of the plaintiffs was a party, dated before August 7. (*See generally* ECF No. 10-2). Further, plaintiffs attached about 30 pages of assorted checks, receipts, and financial statements, (ECF No. 10-2 at 100–30), but provide no indication that plaintiffs could not have acquired these documents before. Likewise, they provide the court now with business entity information from various secretary of state websites, *id.* at 134–39, but have offered no reason why or how these items were unavailable to them on or before August 7. The same is true for plaintiffs' newly-attached document entitled "shareholder's organizational meeting," *id.* at 90–91 (containing signature lines for Sheldon Goldberg and Giacomo Barreca but is signed by neither party). There is no indication on the record that this document, with Sheldon Goldberg's name on it, is something that was unavailable to him on August 7.

Accordingly, this court cannot rely on these exhibits as a basis for reconsideration. LR 59-1. Likewise, pieces of evidence that were already available to plaintiffs at the time of the original motion, but plaintiffs just discovered them or realized they already had them, do not constitute "changed factual circumstances" for the purposes of reconsideration. *See id.*

The only evidence that appears to this court to be "new" is as follows: a July 12, 2017 letter from Phil Strawn to defendant Barreca, (ECF Nos. 10-2 at 3 ¶ 1; 10-2 at 35), a contract between the Florida Distillers and Barreca, *id.* at 37, an email from a Corly Wilkerson of The Tierra Group to Sheldon Goldberg, *id.* at 70, a partially redacted August 11, 2017 email or letter from (presumably) the Florida Distillers, *id.* at 132, and an August 14, 2017 declaration of one Michael A. Panciro, (ECF No. 10-3). Therefore, the court has considered whether these new pieces of evidence warrant reconsideration of the court's original orders under LR 59-1. That said, this order does not detail the potential impact, if any, of each and every of these new pieces of evidence because it is not necessary to do so to explain the court's ruling.

### a. Potential for success on the merits

This court has already held that its denial of a TRO and preliminary injunction did not depend on the plaintiffs' possibility of success on the merits because plaintiffs failed to satisfy the other three elements necessary for preliminary injunctive relief. (ECF Nos. 7, 8). Nonetheless, most of the new evidence plaintiffs attach to the instant motion tends to go toward the merits of their claims, rather than solving the problem discussed in this court's original order. (*See generally* ECF Nos. 10-2, 10-3). The evidence does not advance their cause.

Plaintiffs have failed to show that they have a likelihood of success at trial in establishing that they are entitled to the specific performance and injunctive relief they ultimately seek, and therefore, it follows that they are not entitled to this injunctive relief now, before trial. Plaintiffs request this court to order the defendants to declare that plaintiffs are partners with "equal access, control, and rights to the parties' margarita product and the margarita venture," (ECF No. 10-4 at 3), and order the defendants to treat plaintiffs' accordingly and to "inform all suppliers, vendors, and customers related to the margarita venture that" this partnership exists. Plaintiffs further request this court to enjoin defendants from "imped[ing] in any manner Plaintiffs' equal access to all such suppliers, vendors, and customers." (ECF No. 10-4 at 4). But the evidence plaintiffs have presented does not show that they are entitled to the "equal" management rights they claim they have in this purported partnership.

To the contrary, the written "partnership operating agreement" shows that the parties agreed that defendant "Jack Barreca shall be responsible for ["the company's] day to day operations and Sheldon F. Goldberg shall have oversight of the administrative, accounting, and financial matters of the company," (ECF No. 10-1 at 43–50), and "the company"—though not clearly defined in the contract—appears to refer to a proposed company that will be called Beneficial Beverage Development, LLC, *see id.* at 43. Thus, the face of this agreement does clearly not confer *any* partnership rights or management responsibilities to plaintiffs except in relation to the yet-to-be-formed company Beneficial Beverage. *See id.* at 46 ¶ 4.1.1. Furthermore, even if paragraph 4.1 of the agreement applies to the parties' relationship before

the formation of the new company, it clearly does not confer the broad, "equal" management rights plaintiffs request the court to enforce by injunction.

Further, assuming *arguendo* that this court may consider parol evidence here despite the existence of a written agreement, the emails and communications plaintiffs' have provided the court do little to clarify whether defendants agreed to a legal partnership or, if so, what the respective roles of the parties in the purported partnership are. In the several places he did so, Barreca is not clear what he means when he uses the word "partner"; he appears to use this term loosely, and other, potentially conflicting statements make it unclear whether he viewed plaintiffs as partners, creditors, or investors. *See, e.g. id.* at 79–80 ("I ask for a partner and source of funding . . . I respect your Input . . . ," "My priority is getting You and Barbara a return on your Investment."); *id.* at 83–86 ("Like me, be my partner, Hate me, call me names, I have only one gaol, to bring this company and it[s] products to market and give you a return on your Investment."); *id.* at 88 ("Sheldon, my dear friend and partner."). Also, the newly acquired August 11 email from the Florida Distillers further illustrates the ambiguity here, wherein they wrote to plaintiff Sheldon Goldberg, "You have indicated that you are a creditor of Barreca. That does not impact our contract with him." *Id.* at 132. None of this evidence demonstrates that the parties agreed to equal management of a joint venture. Thus, plaintiffs have failed to show that they have a likelihood of success in proving through trial they have rights as "equal" partners and managers or even that there exists a true, legal partnership at all.

Plaintiffs have not convinced this court, at this juncture, that they have a likelihood of success in proving that they have the equal management rights they claim to have and, therefore, this court cannot issue a TRO or preliminary injunction ordering that which they seek.

Plaintiffs also request the court to order "any and all proceeds from any sales of any margarita product or other property of the margarita venture shall be immediately deposited into Plaintiffs' attorney's trust account, the registry of the Court, or any bank account agreed to by the parties in writing." (ECF No. 10-4 at 4). However, after a thorough review of the current record, this court finds that plaintiffs have not yet shown a likelihood of success on the merits of their causes of action. Accordingly, this court cannot grant the instant motion.

James C. Mahan
U.S. District Judge

- 10 -

### b. Irreparable injury

In this court's original orders on this matter, it ruled, "an award of damages in the form of a money judgment would be an adequate remedy for any of the alleged injuries that the defendants might cause in the absence of the requested preliminary injunction, and thus, plaintiffs have not established an irreparable injury." (ECF No. 8 at 5). The same is true even in light of plaintiffs' new evidence.

The newly discovered July 12, 2017 letter from Phil Strawn indicates that defendants may have lost a buyer of their product. (ECF No. 10-2 at 35). This does not, without more, confer upon the plaintiffs a cause of action against the defendants or indicate that there will be any irreparable harm—as this court explained before, legal damages are always designed to make the plaintiff whole. Nor does it demonstrate that plaintiffs are about to suffer irreparable injury that the court can and should do anything to prevent. The letter shows simply that Strawn cancelled an order for an apparently valid reason: defendants were slow in fulfilling the order. This does not appear to be evidence of a deliberate breach of contract with plaintiffs or fraud. Further, this letter does not appear to prove plaintiffs' "strawman" argument—that defendants are using Strawn as a strawman to circumvent liquor law—but instead simply shows a failed business deal. This letter does not show irreparable harm.

Plaintiffs argue for the first time on reconsideration that "the loss of Plaintiffs' rights, as partners, to equal access, control, and rights to the margarita product and the margarita venture" is a new type of irreparable harm and injury they will suffer if this court does not grant their motion. (ECF No. 10 at 15). First, this court does not see why plaintiffs could not have raised this argument in their original motion—this late-conceived argument was available to plaintiffs before and is therefore inappropriate for a motion for reconsideration. *See* LR 59-1. Second, regardless of its impropriety here, it does not sway the court because, as this court explains above, plaintiffs are unlikely to prove that they are entitled to "equal access, control, and rights to the margarita product and . . . venture."

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

Third, this alleged injury is not irreparable. The Nevada Supreme Court has explained:

> Where a partner wrongfully repudiates the partnership and converts the assets of the partnership to his own use and benefit, the excluded partner has a choice of alternative remedies:
>
>> [H]e may waive the tort or breach and sue to specifically enforce the partnership or joint venture agreement, including the remedy of a judicial dissolution and an accounting and if necessary (as an auxiliary remedy) to impress a trust on partnership or joint venture property, . . . or the victim may submit to the repudiation and sue for damages for breach of the joint venture agreement (including "profits which might have been made") the same as any other action for damages for breach of any other contract.

*Jeaness v. Besnilian*, 706 P.2d 143, 145–46 (Nev. 1985) (quoting *Gherman v. Colburn*, 72 Cal.App.3d 544, 140 Cal.Rptr. 330, 343 (1977)). Clearly, plaintiffs here seek to exercise the first option.

However, simply because specific performance may be available relief in the right case, after an adjudication of plaintiffs' claims on the merits, it does not follow that a court's denial of this relief *before* an adjudication on the merits, in the denial of a TRO or preliminary injunction, constitutes "irreparable harm" where a money judgment remains an available remedy. To the contrary, the availability of "damages for breach of the joint venture agreement (including 'profits which might have been made')" means that the harm is still reparable, even without specific performance of the purported partnership agreement. *See Jeaness*, 706 P.2d at 145–46. Indeed, "the object of compensatory damages is to make one whole." *McKenney v. Buffelen Mfg. Co.*, 232 F.2d 5, 11 (9th Cir. 1956); *Geddes v. United Financial Group*, 559 F.2d 556, 560 (9th Cir. 1977) (noting, "[t]he design of compensatory damages is to make plaintiff whole," and disapproving of the use of the defendants' financial condition in determining compensatory damages). Accordingly, plaintiffs' new argument is inappropriate for a motion for reconsideration and plaintiffs have not shown the court that there is any impending, imminent, irreparable harm.

### c. Balance of hardships

The court's analysis on reconsideration does not change from before. While plaintiffs' narrower request for relief on reconsideration would pose less of a hardship on the defendants than plaintiffs' formerly requested relief, the new request would still impose a hardship on the

defendants in needing to suffer the plaintiffs' unfettered interference in their business dealings with third parties. On the other hand, the hardship to plaintiffs' of not obtaining this relief is minimal given plaintiffs' failure to demonstrate that they are likely entitled to such relief in the first place.

### d. The public interest

This court finds here that the best way to maintain the "status quo" is through judicial restraint and denial this motion. This dispute appears to involve unsettled questions of contract interpretation to which the plaintiffs have not yet demonstrated a likelihood of success on the merits. In such situations, the public interest is best advanced by this court's restraint from meddling in private business dealings. Otherwise, this court risks substantially breaching the public interest by wrongfully interfering with numerous private contracts by injunction.

## IV. Conclusion

Plaintiffs' motion for reconsideration is denied because, even with their newly-attached evidence and reformed arguments, plaintiffs have not established any of the four elements required for a TRO and preliminary injunction: (1) they have not shown, at this juncture, that they are likely to prove that they have the equal partnership and management role they claim to have and succeed on their claims at trial; (2) they have not demonstrated irreparable harm because money damages remains a viable alternative to injunctive relief here; (3) the balance of hardships still leans in favor of the defendants; and (4) public policy here favors judicial restraint and a denial of the instant motion.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiff's emergency motion for reconsideration (ECF No. 10) be, and the same hereby is, DENIED.

DATED August 24, 2017.

_____
UNITED STATES DISTRICT JUDGE